**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HERITAGE HOME GROUP LLC, et al., | Case No. 18-11736 (BLS) |
| Debtors,[1] | Jointly Administered |
| HERITAGE HOME GROUP LLC<br>Plaintiff,<br>and<br>PNC BANK, NATIONAL ASSOCIATION, in its capacity as pre-petition and post-petition lender,<br>Plaintiff-Intervenor,<br>v.<br>ANGELUS FURNITURE OUTLET, INC.<br>Defendant. | Adv. Proc. No. 18-50968 (BLS) |

**PNC BANK, N.A.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY DEFENDANT TO DISMISS ADVERSARY PROCEEDING**

**BLANK ROME LLP**
Stanley B. Tarr (DE No. 5535)
Brandon W. McCune (DE No. 6563)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

John E. Lucian
One Logan Square, 130 North 18th Street
Philadelphia, PA 19103
Telephone: (215)-569-5500
Facsimile: (215) 569-5555

*Counsel for PNC Bank, N.A.*

Dated August 24, 2020

[1] The debtors in these chapter 11 case, along with the last four digits of each debtor's tax identification number, as applicable, are: Heritage Home Group LLC (9506); HH Global II B.V. (0165); HH Group Holdings Us, Inc. (7206); HHG Real Property LLC (3321); and HHG Global Designs LLC (1150). The Debtors' corporate headquarters is located at 1925 Eastchester Drive, Hight Point, North Carolina 27265.

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDING AND FACTS ..... 1

ARGUMENT ..... 2

I. This Court Has Core Jurisdiction Over Debtors' Claims Asserting Defendant's Willful Violations of the Automatic Stay ..... 2

II. Defendant's Reliance on the Forum Selection Clause Is Misplaced. ..... 4

III. Abstention is Neither Mandated Nor Appropriate Here. ..... 5

A. Mandatory Abstention is Improper ..... 5

B. Permissive Abstention is Improper ..... 6

CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Med. Accounts Receivable Solutions, Inc. (In re Coram Healthcare Corp.)*,
2003 WL 22948234 (Bankr. D. Del. Dec. 12, 2003) .... 3

*Beard v. Braunstein*,
914 F.2d 434 (3d Cir. 1990) .... 3

*DHP v. Home Depot (In re DHP Holdings II Corp.)*,
435 B.R. 264 (Bankr. D. Del. 2012) .... 3, 4

*Granfinanciera, S.A. v. Nordberg (In re Chase & Sanborn Corp.)*,
492 U.S. 33 (1989) .... 9

*Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l)*,
320 B.R. 552 (Bankr. D. Del. 2005) .... 7, 9, 10

*Gwynedd Props., Inc. v. Lower Gwynedd Township*,
970 F.2d 1195 (3d. Cir. 1992) .... 7

*In re Exide Techs.*,
544 F.3d 196 (3d Cir. 2008) .... 5, 9

*In re Guild & Gallery Plus, Inc.*,
72 F.3d 1178 (3d Cir. 1996) .... 3

*In re LaRoche Indus., Inc.*,
312 B.R. 249 (Bankr. D. Del. 2004) .... 3, 7

*In re Solano*,
2017 WL 8180597 (C.D. Cal. June 19, 2017) .... 10

*Kurz v. EMAK Worldwide, Inc.*,
464 B.R. 635 (D. Del. 2011) .... 5, 9

*Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*,
474 U.S. 494 (503) (1986) .... 8

*Scenic Tours Pty Ltd. v. Haimark, Ltd.*,
2017 WL 1684138 (D. Colo. May 3, 2017) .... 9

*Stern v. Marshall*,
564 U.S. 462 (2011) .... 5

*Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*,
278 B.R. 42 (Bankr. D. Del. 2002) ....................5, 6

*True Health Diagnostics LLC v. Azar (In re THG Holdings LLC)*,
604 B.R. 154 (Bankr. D. Del. 2019) ....................3

*Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*,
690 F. Supp. 2d 311 (S.D.N.Y. 2010)....................5, 9

**Statutes**

11 U.S.C. § 362....................3, 5, 6, 8

28 U.S.C. § 157....................3

28 U.S.C. § 1334(b) ....................8

28 U.S.C. § 1412....................4

Plaintiff-Intervenor, PNC Bank, National Association ("PNC"), files this memorandum of law in opposition to Defendant Angelus Furniture Outlet, Inc.'s motion to dismiss and supporting memorandum [D.I. 11, 12] and states as follows:

**NATURE AND STAGE OF PROCEEDING AND FACTS**

1. On July 29, 2018, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On August 29, 2018, the Bankruptcy Court entered the *Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing on a Final Basis and (B) Utilize Cash Collateral of Secured Parties on a Final Basis, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363(c), (d) & (e), 364(c), 364(d)(1), 364(e) and 507(b)* [Main Case, D.I. 209] (as amended, the "Final DIP Order").[2]

3. Post-petition (as was done pre-petition), Defendant purchased goods from Debtors by sending Debtors one or more dated and numbered purchase orders (collectively, "POs"). Debtors acknowledged acceptance of the POs subject to the *Terms and Conditions of Sales (to Retailer)* (the "Terms and Conditions").

4. On December 17, 2018, Debtors commenced this Adversary Proceeding by filing their Complaint

5. On February 26, 2019, Defendant moved to dismiss.

6. On March 6, 2019, pursuant to the DIP Credit Agreement (as defined in the Final DIP Order) and Final DIP Order, PNC sent to Debtors a certain Notice of Default and Reservation

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Final DIP Order.

of Rights (the "Default Notice").

7. On March 15, 2019 (the "Conversion Date"), this Court entered orders converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code and appointing Alfred T. Giuliano as the chapter 7 trustee ("Chapter 7 Trustee") therefor.

8. On November 14, 2019, the Court entered its Order approving *Stipulation By and Between Chapter 7 Trustee for the Estates of Heritage Home Group, LLC, et al., and PNC Bank, National Association* [D.I. 842] ("Stipulation"), pursuant to which the Chapter 7 Trustee stipulated and agreed that as of the Conversion Date, Debtors were indebted to PNC in the aggregate amount of $25,681,436.65 and that PNC has valid, enforceable, perfected and non-avoidable first priority security interests in and liens on all Pre-Petition Collateral and DIP Collateral (each as defined in the Final DIP Order), including accounts receivables.

9. On May 4, 2020, PNC filed its *Motion to Intervene Pursuant to Federal Rule of Civil Procedure 24* [D.I. 31], which the Court granted by Order entered on July 23, 2020.

10. The debt Defendant owes Debtors' estates principally arose from Defendant knowingly entering into a series of post-petition agreements to purchase goods from Debtors, with knowledge they were liquidating, and its subsequent refusal with impunity to pay for those post-petition goods by asserting purported rights to recover a claim against the Debtors that arose pre-petition and exercised control over estate property, all in contravention of the automatic stay.

## ARGUMENT

### I. This Court Has Core Jurisdiction Over Debtors' Claims Asserting Defendant's Willful Violations of the Automatic Stay.

11. Defendant's post-petition actions in connection with property of the estate constitute willful violations of the automatic stay; namely, Defendant's: (a) failure to remit payment of outstanding receivables concurrent with its failure to timely file for stay relief is an

exercise of control over property of the estate under Bankruptcy Code section 362(a)(3); (b) continued exercise of control over outstanding receivables is an act to "collect, assess or recover a claim against the debtor" under Bankruptcy Code section 362(a)(6); and (c) withholding of payment on account of the outstanding receivables without seeking stay relief to setoff any amounts is a violation under Bankruptcy Code section 362(a)(7). *See True Health Diagnostics LLC v. Azar (In re THG Holdings LLC)*, 604 B.R. 154, 160 (Bankr. D. Del. 2019) (violations of 362(a)(3), (6) and (7) require both (i) a post-petition action and (ii) property of the estate).

12. Defendant's contention that the claims asserted by Plaintiff are non-core ignores both the law and facts as they pertain to Debtors' claims.

13. First, contrary to Defendant's assertion, substantially all of the debt Defendant owes Debtors arose from *post-petition* transactions.

14. Defendant correctly recites that "a proceeding is core (a) if it involves substantive rights provided by Title 11, or (b) if it is a proceeding, by its nature, that could only arise in the context of a bankruptcy case." (Dismissal Motion, ¶ 14 (citing *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1178 (3d Cir. 1996); *DHP v. Home Depot (In re DHP Holdings II Corp.)*, 435 B.R. 264, 270 (Bankr. D. Del. 2012)).) Each violation of an automatic stay is necessarily a core proceeding. *See* 28 U.S.C. §§ 157(b)(2)(A)-(B), (b)(2)(G), (b)(2)(O).[3]

15. Defendant cannot reasonably claim that it suffered from an "unfair surprise" by transacting business with Debtors. *See Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990) ("Parties who contract with a bankruptcy company's trustee or debtor-in-possession know they are

[3] Additionally, this Court has determined it has core jurisdiction over claims for the breach of a post-petition contract. *In re LaRoche Indus., Inc.*, 312 B.R. 249, 253 (Bankr. D. Del. 2004); *Adams v. Med. Accounts Receivable Solutions, Inc. (In re Coram Healthcare Corp.)*, 2003 WL 22948234, at *9 (Bankr. D. Del. Dec. 12, 2003).

dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.”). Defendant purposefully and voluntarily conducted business with an entity liquidating in bankruptcy, determined to breach its obligations under the POs, and has failed to evidence any post-petition claims (warranty or otherwise) that would allow Defendant any right of setoff or other defense. Importantly, Defendant has not sought relief from this Court in advance of taking non-payment actions.

16. Since Defendant continues to withhold payment of outstanding receivables on the basis of purported pre-petition claims in violation of the automatic stay, it is a core proceeding over which this Court has authority to adjudicate and enter a final order.

**II. Defendant’s Reliance on the Forum Selection Clause Is Misplaced.**

17. Defendant’s colorful biscuit analogies aside, Debtors’ claims are not state law claims and do not belong in North Carolina court.

18. Once a debtor enters bankruptcy, its interactions with other parties are necessarily governed by, or at the very least touch upon, federal bankruptcy law. *See Beard*, 914 F.2d at 445 (3d Cir. 1990). To baldly assert that a party who knowingly enters into a contractual post-petition relationship with a debtor should be able to remove its case from bankruptcy jurisdiction by simply stating a particular claim may involve questions of state law is to ignore the very principle and purpose of bankruptcy law.

19. Further, the transfer of any adversary proceeding is governed by 28 U.S.C. § 1412 (applying to transfers of “proceedings under title 11”). While the statute allows for transfers “in the interest of justice,” bankruptcy cases raise special considerations that typically are not addressed in the non-bankruptcy case law. *See DHP Holdings II Corp. v. The Home Depot, Inc. (DHP Holdings II Corp.)*, 435 B.R. 264, 268-70 (Bankr. D. Del. 2010) (while convenience of parties and interest of justice are factors under § 1412, transfer of an adversary proceeding must

consider bankruptcy principles).

20. Where a movant relies on a forum selection clause in seeking to transfer a case over which a bankruptcy court is exercising jurisdiction, the "critical inquiry" is whether the proceeding is "core" or "non-core," because "forum selection clauses are not enforceable when the state action falls within a bankruptcy court's core jurisdiction." *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 641 (D. Del. 2011) (citing *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) ("[w]hether claims are considered core or non-core proceeding dictates . . . the enforcement of forum selection clauses")); *see also Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 330-31 (S.D.N.Y. 2010) ("by negative implication, the Third Circuit indicated that if a claim is core, forum selection clauses should not be enforced. . ."). As discussed s*upra*, because the claim relates to the willful violation(s) of the automatic stay – and in connection with post-petition agreements – Debtors' claims are necessarily subject to core jurisdiction. Accordingly, Defendant's reliance on the Terms and Conditions' forum selection clause is insufficient.

21. Defendant's appeal to the U.S. Supreme Court's analysis in *Stern v. Marshall*, 564 U.S. 462 (2011) is similarly unavailing. *Stern* dealt specifically with a state law cause of action that had no bearing on the administrative or regulatory regime in which it arose; here, the willful stay violation by definition implicates this Court's core jurisdiction. Defendant engaged in a business relationship with the Debtors whereby it purchased or received property from the estates and then refused to pay for it, intentionally violating 11 U.S.C. § 362.

22. Based on the foregoing, this Court should retain jurisdiction over this matter.

## III. Abstention is Neither Mandated Nor Appropriate Here.

### *A. Mandatory Abstention is Improper*

23. The criteria delineated in *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.),* 278 B.R. 42, 50 (Bankr. D. Del. 2002) and recited in Defendant's motion are not

met here and thus mandatory abstention is inappropriate. To mandate a bankruptcy court's abstention from hearing a proceeding, the following criteria must be evaluated:

> (1) the motion to abstain is timely; (2) the action is based on a state law claim or a state law cause of action; (3) an action has already been commenced in state court; (4) the action can be timely adjudicated; (5) there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in federal court absent bankruptcy; and (6) the matter before the Court is non-core.

*In re Trans World Airlines, Inc*., 278 B.R. at 42.

24. First, as described above, the cause of action here is not a state law claim—it is a claim seeking redress for Defendant's willful violation of the automatic stay and to recoup property of the Debtor's estate improperly obtained through breaches of post-petition agreements.

25. Second, an action has *not* been commenced in state court.

26. Third, Defendant maintains that "there is no reason to believe that a state court action could not be filed in the courts of the State of North Carolina (Guilford Country) and timely adjudicated." (Dismissal Motion, ¶ 23.) This is not the standard that must be met. With no currently pending action, whether one could be timely adjudicated is a moot point. Further, like many state courts, the North Carolina courts are currently in the midst of a judicial emergency and have limited operations (*see* COVID-19 (Coronavirus) Updates, https://www.nccourts.gov/covid-19). As this case is already pending, it has a much better opportunity to be timely adjudicated this Court rather than in a nonexistent state court action.

27. Fourth, as demonstrated above, this action is a core matter relating to the violation of 11 U.S.C. § 362 and thus a basis for federal bankruptcy jurisdiction exists.

28. Therefore, since Defendant cannot satisfy any of these criteria (other than timeliness), mandatory abstention is not appropriate.

***B. Permissive Abstention is Improper***

29. As Defendant concedes, permissive abstention "rarely should be invoked."

(Dismissal Motion, ¶ 27 (quoting *Gwynedd Props., Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d. Cir. 1992)).) Permissive abstention should only be invoked when the balance of twelve factors weighs in its favor:

> 1. the effect or lack thereof on the efficient administration of the estate;
> 2. the extent to which state law issues predominate over bankruptcy issues;
> 3. the difficulty or unsettled nature of applicable state law;
> 4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> 5. the jurisdictional basis, if any, other than section 1334;
> 6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> 7. the substance rather than the form of an asserted "core" proceeding;
> 8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> 9. the burden of the court's docket;
> 10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> 11. the existence of a right to a jury trial; and
> 12. the presence of non-debtor parties.

*In re LaRoche Indus., Inc.*, 312 B.R. 249, 253-43 (Bankr. D. Del. 2004); *see also Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l),* 320 B.R. 552, 556-60 (Bankr. D. Del. 2005) (examining the above factors and holding that the "balance of factors weighs against permissive abstention"). These factors are all "relevant," but no one factor is dispositive. *See In re LaRoche Indus., Inc.*, 312 B.R at 255 ("Evaluating the[se] twelve factors is not a mathematical formula." (internal citation omitted)).

30.     First, should this Court abstain, the effect on the estates would be undeniable. Debtors' claim against Defendant is one of eight adversary proceedings dealing with substantially similar facts. If this Court abstains from this action, there is a risk of inconsistent judgments arising from similar facts. "The estate is poorly served by a decision that would subject it to inconsistent judgments. This factor weighs strongly against abstention." *In re Mobil Tool Int'l*, 320 B.R. at 557.

31. Second, state law does not predominate over bankruptcy issues in this matter. While Defendant frames Debtors' claim as a straightforward breach of contract claim, PNC maintains that Debtors' claim is for intentional violation of the automatic stay. Enforcement of the automatic stay is critical to the effectiveness of a debtor to accomplish the policy goals of bankruptcy.

32. Third, there is no issue of difficult or unsettled law here; this is a matter of the application of 11 U.S.C. § 362 and the application of bankruptcy policy in order to efficiently and effectively administer the Debtors' estates. This is the type of action this Court frequently considers, and a North Carolina state court cannot better determine the issues at play.

33. Fourth, as Defendant concedes, there is no related state proceeding brought in any other court. (Dismissal Motion, ¶ 32.)

34. Fifth, PNC concedes that there is not a basis for federal jurisdiction over this matter other than 28 U.S.C. § 1334(b). However, the bankruptcy question involved—whether Defendant violated the automatic stay—is a significant one: "[t]he automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." *Midatlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494 (503) (1986) (internal quotations omitted).

35. Sixth, contrary to Defendant's assertions, this matter does involve issues of bankruptcy law and does relate to the main case to the extent the condition of the Debtors' estates is concerned. Further, PNC's involvement in this matter as agent and representative and in cooperation with the Chapter 7 Trustee lends additional weight to its pursuit of the stay violation claim as they relate to and benefit Debtors' estates.

36. Seventh, the proceeding is a core matter due to its relation to bankruptcy law, post-

petition contractual relationships, and violations of the automatic stay. Therefore, it is substantively a core matter and not merely a state law claim masquerading as something else.

37. Eighth, although severability here may be feasible, no state law claims have been brought. Therefore, this is not a question of whether a pending state action could provide Defendant or Debtors adequate relief without involving the bankruptcy court. Additionally, Debtors would have no recourse in state court for Defendant's violation of the automatic stay.

38. Ninth, although this Court's docket is routinely and, perhaps infamously, heavy, this Court is already administrating the Debtors' bankruptcy cases and it therefore has an interest in adjudicating all matters arising therefrom, especially when the adversary proceedings all address similar questions and claims. *In re Mobile Tool Int'l*, 320 B.R. at 557.

39. Tenth, no forum shopping has occurred because the forum selection clause is inapplicable here. *Kurz*, 464 B.R. at 641 (citing *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) ("[w]hether claims are considered core or non-core proceeding dictates . . . the enforcement of forum selection clauses")); *see also Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 330-31 (S.D.N.Y. 2010) ("by negative implication, the Third Circuit indicated that if a claim is core, forum selection clauses should not be enforced. . ."). Debtors are incorporated in Delaware; Debtors filed for bankruptcy in Delaware and this adversary proceeding necessarily arises in Delaware.

40. Eleventh, Defendant does not have a right to a jury trial for violation of the automatic stay.[4] *See, e.g.*, *Scenic Tours Pty Ltd. v. Haimark, Ltd.*, 2017 WL 1684138, at *5 (D.

---

[4] For this same reason, Defendant's argument in section IV of its motion fails. (*See* Defendant MTD, ¶¶ 48-49.) Defendant has no right to a jury under these circumstances, so its application of *Granfinanciera, S.A. v. Nordberg (In re Chase & Sanborn Corp.)*, 492 U.S. 33 (1989) is irrelevant. Further, even if Defendant *did* have a jury right, "immediately transferring a matter to district court because of a jury trial right would run counter to our bankruptcy system and would effectively

Colo. May 3, 2017) (holding that actions for violation of the automatic stay are exclusively within a bankruptcy court's jurisdiction and that bankruptcy courts are not empowered to conduct jury trials). Further, and much more practically, North Carolina state courts suspended jury trials based on the COVID-19 pandemic. (*See* COVID-19 (Coronavirus) Updates, https://www.nccourts.gov/covid-19.)

41. Twelfth, PNC is acting here as both the Plaintiff-Intervenor and as agent and representative on behalf of Debtors' estates. Although PNC is a non-debtor party, it is prosecuting this action in tandem with the Chapter 7 Trustee and is doing so specifically for the benefit of Debtors' estates. As the court stated in *In re Mobile Tool Int'l,* "the mere fact that [nondebtors] are parties to these adversaries does not warrant abstention. The real party in interest in the adversary proceedings is the estate." 320 B.R. at 559.

**CONCLUSION**

For the foregoing reasons, PNC respectfully requests that this Court deny Defendant's motion to dismiss and grant such further and other relief that is just and equitable.

---

subvert this system by undermining the efficient use of judicial resources and uniformity of bankruptcy administration." *In re Solano*, 2017 WL 8180597, at *3 (C.D. Cal. June 19, 2017) (internal quotations omitted).


Dated: August 24, 2020

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*

Stanley B. Tarr (DE No. 5535)
Brandon W. McCune (DE No. 6563)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

John E. Lucian
One Logan Square, 130 North 18th Street
Philadelphia, PA 19103
Telephone: (215)-569-5500
Facsimile: (215) 569-5555

*Counsel to PNC Bank, N.A.*