IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> HERITAGE HOME GROUP LLC, *et al.*, <br>       Debtors,[1] | Chapter 11 <br><br> Case No. 18-11736 (BLS) <br><br> Jointly Administered |
| HERITAGE HOME GROUP LLC, <br><br>       Plaintiff, <br><br>   v. <br><br> ANGELUS FURNITURE OUTLET, INC., <br><br>       Defendant. | Adv. Proc. No. 18-50968 (BLS) |

**MEMORANDUM OF LAW FOR REPLY IN SUPPORT OF MOTION
<u>BY DEFENDANT TO DISMISS ADVERSARY PROCEEDING</u>**

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE #3995)
Jason A. Gibson (DE #6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com
    gibson@teamrosner.com

Dated: September 14, 2020
    Wilmington, Delaware

**FENNEMORE CRAIG, P.C.**
Anthony W. Austin
2394 E. Camelback Road, Ste. 600
Phoenix, AZ 85016
Telephone: 602-916-5000
Email: aaustin@fclaw.com

*Counsel to Defendant*

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are: Heritage Home Group LLC (9506); HH Global II B.V. (0165): HH Group Holdings US, Inc. (7206); HHG Real Property LLC (3221); and HHG Global Designs LLC (1150). The Debtors' corporate headquarters is located at 1925 Eastchester Drive, High Point, North Carolina 27265.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
Preliminary Statement......................................................................................................1
Nature of Proceeding and Relevant Factual Allegations ................................................2
Legal Argument ...............................................................................................................3
    I.    The Complaint Seeks Non-Core Relief ................................................................3
    II.   The FSC Is Enforceable And The Complaint Should Be Dismissed For Improper Venue. ...................................................................................................................7
    III.  Abstention Is Either Required or Appropriate ......................................................8
        A. Mandatory Abstention ....................................................................................8
        B. Permissive Abstention Is Warranted............................................................10
Conclusion ....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Home Mortgage Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortgage Holdings, Inc.)*, 388 B.R. 69 (Bankr. D. Del. 2008) .................................................. 5

*AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust),* 335 B.R. 309 (Bankr. D. Del. 2005) ................................................... 7

*Beard v. Braunstein*, 914 F.2d 434 (3d Cir.1990) ...................................................... 5, 6

*DHP v. Home Depot (In re DHP Holdings II Corp.)*, 435 B.R. 264 (Bankr. Del. 2010) ........................................................................ passim

*Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.)*, 817 F.2d 1047, (3d Cir. 1987) ............................................................................. 7

*Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l, Inc.)*, 320 B.R. 552 (Bankr. D. Del. 2005) ............................................................................ 11

*In re Coram Healthcare Corp.*, 2003 WL 22948234 (Bankr. D. Del. 2003) ............................... 6

*In re LaRoche Indus., Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004) ........................................ passim

*LJM2 Co-Inv. L.P. v. LJM2 Capital Mgmt., L.P.*, 2003 WL 431684 (D. Del. Feb. 24, 2003) ...................................................................................... 9

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) .................................................................................. 5

*Official Comm. Unsecured Creditors v. Elkins, et al. (In re Integrated Health Services, Inc.),* 291 B.R. 615 (D. Del. 2003) ................................................................... 9, 12

*Omna Med. Partners, Inc. v. Carus Healthcare, P.A. (In re Omna Med. Partners, Inc.),* 2000 WL 33712302 (Bankr. D. Del. June 12, 2000) .......................................... 7

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) .................................................................. 8

*Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*, 267 B.R. 673 (2000) ............................................................................................. 12

*Trans World Airlines, Inc. v. Icahn et al. (In re Trans World Airlines, Inc.),* 278 B.R. 42 (Bankr. D. Del. 2002) ................................................................................ 9

*TTS, Inc. v. Stackfleth (In re Total Technical Services, Inc.),* 142 B.R. 96 (Bankr. D. Del. 1992) ............................................................................................ 10

*Uber v. Nelnet, Inc. (In re Uber)*, 443 B.R. 500 (Bankr. S.D. Ohio 2011) ................................. 4

**Statutes**

28 U.S.C. § 1334(c)(2) .............................................................................. 1, 10

28 U.S.C. § 1334(c)(1) .............................................................................. 1, 10

**Rules**

Del. Bankr. L. R. 7012-1,................................................................................................... 11

Fed. R. Bankr. P. 7012 ....................................................................................................... 1

Fed. R. Civ. P. 12(b)(3)...................................................................................................... 1

Angelus Furniture Outlet, Inc. ("Defendant"), by and through its undersigned counsel, hereby submits the following reply in support of its Motion to Dismiss ("Motion") this adversary proceeding filed by Heritage Home Group LLC ("Heritage" or "Plaintiff") (collectively with certain affiliated entities, the "Debtors"). Despite Plaintiff's attempts to cloth Counts 1-3 of the Complaint in bankruptcy garb, the claims are substantively state law claims for breach of contract which are based on and arise out of the "Terms and Conditions of Sale (to Retailer)" between the Plaintiff and Defendant (the "Supply Agreement"). The Supply Agreement contains an enforceable Forum Selection Clause ("FSC") which required Plaintiff to bring these claims in the state courts of North Carolina. The Court should therefore dismiss the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), made applicable herein through Federal Rules of Bankruptcy Procedure 7012.

Alternatively, the Court should abstain on a mandatory or permissive basis pursuant to 28 U.S.C. §§ 1334(c)(1) or (2) because the balance of relevant considerations strongly favors abstention. Finally, because the Complaint alleges non-core claims, the Court should enter an order confirming that in any adjudication of this matter, it will only enter proposed findings of fact and conclusions of law subject to *de novo* review by the District Court.

**Preliminary Statement**

1. The Complaint in this adversary proceeding contains 3 Counts: (1) Violation of 11 U.S.C. § 362, Automatic Stay; (2) Debt; and (3) Turnover under 11 U.S.C. § 522. Each claim relies on nearly identical facts. In short, Plaintiff claims it sold and delivered goods to Defendant pursuant to the Supply Agreement both pre- and post-petition, and Defendant failed to pay for some of those goods. Defendant disputes the amounts claimed and has defenses to the claims, which are outlined in the Motion and include Plaintiff's failure to honor its manufacturer's warranty, which has forced Defendant to expend significant funds.

{00029020.2}

2. Plaintiff's claims do not arise in or under the Bankruptcy Code and exist independent of the bankruptcy. They are quintessential common law claims and are non-core, despite Plaintiff's attempt to plead provisions of the Bankruptcy Code to avoid the terms of the Supply Agreement. By filing claims in this Court, Plaintiff has breached the FSC.

3. Because Plaintiff's claims are substantively non-core, the Court should enforce the FSC and dismiss this matter for improper venue or abstain. If the matter does proceed before this Court, the Court should enter an order determining that it does not possess the statutory authority to enter a final order, and is limited to making proposed findings of facts and law.

### Nature of Proceeding and Relevant Factual Allegations

4. On July 29, 2018, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On December 17, 2018, Plaintiff filed this adversary proceeding, alleging the following Counts:

    a. Count 1: violation of 11 U.S.C. § 362, automatic stay;

    b. Count 2: "debt"; and

    c. Count 3: turnover under 11 U.S.C. § 522 [sic].

(collectively, (a) – (c), the "State Law Claims"). The State Law Claims are predicated on the Supply Agreement (which includes the FSC).

6. The FSC, contained in the Supply Agreement under the heading, "Governing Law, Resolution of Disputes," provides as follows:

> "All matters relating to the sale of goods by Seller to Buyer shall be construed under and governed by the laws of North Carolina. Both Buyer and Seller will submit themselves to the jurisdiction of the courts of North Carolina for **resolution of any disputes** between them, and **any lawsuits shall be initiated and tried** in the State or federal courts of North Carolina, with venue in Guilford County."

Supply Agreement (emphasis added). The resolution of the present dispute could and should have been brought in North Carolina.

7. Defendant filed its Motion to dismiss the adversary proceeding on February 26, 2019. On March 15, 2019 (the "Conversion Date"), the Court converted Debtors' chapter 11 cases to cases under chapter 7 and appointed a chapter 7 trustee (the "Chapter 7 Trustee"). Thereafter, PNC Bank, National Associate ("PNC") filed a motion to intervene [D.I. 31], which the Court granted on July 23, 2020. As a result of certain security interests it has in funds that may be recovered in connection with this matter, PNC is prosecuting this case on behalf of the Chapter 7 Trustee. PNC filed its Memorandum of Law in Opposition to Motion by Defendant to Dismiss Adversary Proceeding (the "Response") on August 24, 2020.

8. In the Response, PNC asserts that the Court has core jurisdiction over Plaintiff's claim for violation of the automatic stay. PNC also urges the Court to decline to enforce the unambiguous FSC and determine that abstention is neither mandatory or appropriate. PNC claims the debt alleged in this case arose primarily from Defendant entering into a series of post-petition agreements to purchase goods from Debtors pursuant to one or more purchase orders ("POs"). Resp. at ¶¶ 3 and 10. Although Plaintiff failed to attach a copy, the Supply Agreement governs the party's business relationship. It was executed prior to the Petition Date and there is no post-petition contract at issue in this case.

## Legal Argument

### I. The Complaint Seeks Non-Core Relief

9. PNC contends that the Court has core jurisdiction over Count One of the Complaint, which alleges a violation of the automatic stay. PNC appears to concede that Counts Two and Three, for debt and turnover respectively, are non-core.

10. The parties agree that a proceeding is core (a) if it involves substantive rights provided by Title 11, or (b) if it is a proceeding, by its nature, that could only arise in the context of a bankruptcy case. *DHP v. Home Depot (In re DHP Holdings II Corp.)*, 435 B.R. 264, 270 (Bankr. Del. 2010). *See also Uber v. Nelnet, Inc. (In re Uber)*, 443 B.R. 500, 505 (Bankr. S.D. Ohio 2011)(internal quotation omitted)("a non-core proceeding is one that does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy."). There is no question that Plaintiff's claims for goods sold and delivered could exist outside of the bankruptcy context. However, PNC contends that this matter involves rights provided by Title 11 (i.e. the automatic stay) and is therefore core. PNC's position places form above substance.

11. Although Count One of the Complaint is plead as a violation of the automatic stay, the facts alleged in support of the claim show it is a garden variety state law claim for breach of contract. Plaintiff claims it entered into a contractual business relationship with Defendant (the Supply Agreement) under which Defendant agreed to pay for goods Plaintiff delivered. Compl. at ¶ 10. Plaintiff alleges that Defendant refused to pay for some of those goods delivered pre- and post-petition, and also acknowledges that Defendant has defenses to Plaintiff's claims. Compl. at ¶¶ 17-18. The nature of the so-called violation of the automatic stay is Defendant's alleged breach of the Supply Agreement itself.

12. Plaintiff's claim is not core simply because the alleged breach is plead as a violation of the automatic stay, particularly when the alleged debt is disputed. *See DHP Holdings*, 435 B.R. at 271 (court must analyze whether bankruptcy provisions are properly invoked or whether the action is truly a traditional state law claim for breach of contract and "[m]ost Courts require that the debt be undisputed for the action to be core.") In *DHP Holdings*, for example, the court

determined that a "turnover action is a non-core claim because it seeks to collect a disputed pre-petition account receivable." *Id*. *See also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 89, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (stating that defendant could not unwillingly be brought before non-Article III court on traditional breach of contract suit) (J. Rehnquist concurring); *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir.1990) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core."); *Am. Home Mortgage Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortgage Holdings, Inc.)*, 388 B.R. 69, 94 (Bankr. D. Del. 2008) (dismissing a turnover action because title to the debt was disputed).

13. PNC has not rebutted the long line of cases establishing that state law claims to recover money owed under a contract are non-core. *See, e.g., Northern Pipe Line Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 90 (1982); *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997) (stating that breach of contract claims have consistently and traditionally been found to be non-core). Moreover, the Third Circuit has held that an action involving "pre-petition contracts, allegedly breached both before and after the filing of the petition is an entirely non-core matter related to a case arising under title 11." *Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990).

14. PNC relies on cases that hold a claim for breach of a *post*-petition contract are core. But those cases are unavailing and involve dissimilar facts, particularly in light of the fact that the Court is not presented with a post-petition contract, but rather the pre-petition Supply Agreement. *In re LaRoche Indus., Inc.*, for example, involved a court-approved (post-petition) asset purchase agreement. 312 B.R. 249, 252 (Bankr. D. Del. 2004). The Court determined that the debtor's turnover claim was core because it was based on a post-petition contract, which is not the case here. *Id*. Moreover, despite determining that the claim was core, the *LaRoche* court determined

that permissive abstention was appropriate, noting "this case is essentially a contract dispute" and "state law issues do predominate[.]" *Id.* at 254. *In re Coram Healthcare Corp.* likewise involved a contract entered into and allegedly breached after the bankruptcy commenced. 2003 WL 22948234, at *3 (Bankr. D. Del. 2003). Although the claims arose in the bankruptcy case and were therefore core, the court granted a motion to dismiss for improper venue. *Id.*

15. PNC contends that there is no "unfair surprise" here because Defendant conducted business with Plaintiff with the knowledge that Plaintiff was liquidating. Resp. at ¶ 15. This ignores the fact that Defendant agreed to do business with Plaintiff before Plaintiff commenced its bankruptcy case and did so in reliance on the terms and conditions set forth in the Supply Agreement, including the FSC. This pre-petition agreement was undoubtedly a contract between two "apparently healthy" companies. *See Beard*, 914 F.2d at 445 (noting the obvious prejudice when a party is forced into bankruptcy court, without a jury or Article III protections, to defend a pre-petition contract that it entered into with an "apparently healthy" company that had not filed a bankruptcy petition). There is no question that Defendant is prejudiced by Plaintiff's decision to bring its pre- and post-petition claims in bankruptcy court in violation of the FSC.

16. PNC appears to concede that two of Plaintiff's claims are non-core. With respect to the remaining claim for violation of the automatic stay, the Court should look to the substance of the claim, not the manner in which Plaintiff chose to plead it. The claim is, at heart, a state law claim for breach of contract and is therefore non-core. *See In re LaRoche Indus., Inc.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004) ("the essence of this claim is a contract dispute, not a bankruptcy law dispute. While the Debtor argues that the case involves a request for turnover of property of the estate under section 542, it is really only seeking to collect a debt it alleges is due to it under

the Agreement. No substantive issues of bankruptcy law are involved."). The Court is without authority to enter a final order adjudicating this matter.

## II. The FSC Is Enforceable And The Complaint Should Be Dismissed For Improper Venue.

17. PNC asks this Court to refuse to enforce the FSC because Plaintiff's claims are core. As noted above, the State Law Claims set forth in the Complaint are non-core (despite how they are phrased). These claims could and should have been brought in the venue specified in the Supply Agreement and the Court should enforce the FSC.

18. The Third Circuit Court of Appeals repeatedly has held that "forum selection [clauses] are generally binding upon bankruptcy courts, just as they are binding upon other federal courts." *LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.),* 312 B.R. 249, 256 (Bankr. D. Del. 2004); *see also Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.),* 817 F.2d 1047, 1050-51 (3d Cir. 1987); *Coastal Steel v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202-4 (3d Cir. 1983), *cert. denied,* 464 U.S. 938 (1983). This Court has enforced forum selection clauses. *See, e.g., In DHP Holdings,* 435 B.R. 264; *AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust),* 335 B.R. 309, 329 (Bankr. D. Del. 2005); *Omna Med. Partners, Inc. v. Carus Healthcare, P.A. (In re Omna Med. Partners, Inc.),* 2000 WL 33712302, at *4 (Bankr. D. Del. June 12, 2000) (The "issues … are not so central to this reorganization as to overcome the presumptively valid forum selection clause to which the parties agreed.").

19. In addition, declining to enforce the FSC would not serve the interests of justice. These are common law claims that state courts routinely adjudicate. There is no question that Plaintiff would be required to prosecute its claims in state court in North Carolina in the absence of the Debtors' bankruptcies, and the claims would look substantively identical. Dismissing the

Complaint for improper venue serves public policy by bolstering freedom of contract and protecting the parties' reasonable expectations.

20. Moreover, this case does not present any "special considerations" which require the bankruptcy court's continued attention. The claims are non-core and the Court cannot enter a final judgment. *See Stern v. Marshall*, 131 S. Ct. 2594 (2011). None of the claims truly arise under or are dependent on the Bankruptcy Code and the resolution of the State Law Claims is far removed from the bankruptcy claims resolution process. Indeed, Defendant has not filed a proof of claim and it appears from PNC's filings that any recovery will go to PNC, not the estate's creditors generally. Requiring Plaintiff to prosecute these claims in North Carolina, as agreed, will have no impact on the administration of the estate. The Court should enforce the parties' expectations and agreements and dismiss this matter for improper venue.

### III. Abstention Is Either Required or Appropriate

21. Because there is nothing unique about the state law claims asserted by Plaintiff, and the parties already agreed upon a venue to adjudicate "all disputes," Plaintiff's claims are subject to either mandatory or permissive abstention, as described more fully below.

#### A. Mandatory Abstention

22. Mandatory abstention is appropriate here because each of the following criteria is present:

(1) The motion to abstain is timely;
(2) The action is based upon a state law claim or cause of action;
(3) An action has been commenced in state court;
(4) The action can be timely adjudicated;
(5) There is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in federal court absent bankruptcy; and
(6) The matter before the Court is non-core.

*Trans World Airlines, Inc. v. Icahn et al. (In re Trans World Airlines, Inc.),* 278 B.R. 42, 50 (Bankr. D. Del. 2002) (abstaining from hearing adversary proceeding under both mandatory and permissive abstention grounds); *see also LJM2 Co-Inv. L.P. v. LJM2 Capital Mgmt., L.P.,* 2003 WL 431684, at *2 (D. Del. Feb. 24, 2003) (finding mandatory abstention appropriate, as all criteria are met, and alternatively finding that permissive abstention is also appropriate); *Official Comm. Unsecured Creditors v. Elkins, et al. (In re Integrated Health Services, Inc.),* 291 B.R. 615, 621 (D. Del. 2003) (finding discretionary abstention appropriate).

23. First, PNC concedes that Defendant's motion to abstain is timely. Resp. at ¶ 28.

24. Second, Plaintiff's claims are state law claims for breach of contract, regardless of Plaintiff's attempt to invoke provisions of the Bankruptcy Code. Plaintiff is simply seeking to recover what it contends it is owed under the Supply Agreement.

25. Third, although there is no prior state law action pending, that is because Plaintiff disregarded the FSC and brought the action in this Court. *See In re LaRoche Indus., Inc.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004) ("the fact that Orica ignored that agreement when it filed the suit in Illinois should not be counted in its favor.").

26. Fourth, a state court action in North Carolina can be timely adjudicated. Though PNC references temporary limitations in North Carolina court operations resulting from the COVID-19 pandemic, it is worth noting that courts across the country (federal and state) are facing similar limitations. Defendant's Motion was filed well in advance of the beginning of the pandemic and has been pending for over a year. Though this case is already pending (because Plaintiff ignored the FSC), very little has happened. If Plaintiff is forced to refile this action in the appropriate forum, any delay will be minimal.

27. Fifth, PNC concedes there is no independent basis for federal jurisdiction. Resp. at ¶ 34.

28. Sixth, as noted above, none of the relief sought in the Complaint is a core proceeding. *See TTS, Inc. v. Stackfleth (In re Total Technical Services, Inc.),* 142 B.R. 96, 99 (Bankr. D. Del. 1992) (holding adversary proceeding is non-core because claims were based on state law).

29. Because Defendant has demonstrated that all of the criteria for mandatory abstention under 28 U.S.C. § 1334(c)(2) are met, this Court must abstain from adjudicating the Complaint.

### B. Permissive Abstention Is Warranted

30. Even if the Court decides some of the claims in this matter are core, the Court should abstain from hearing the Complaint on the basis of permissive abstention. Section 1334 of title 28 of the United States Code provides this Court with discretion to abstain from hearing a matter based on "the interest of justice, or in the interest of comity with State courts or respect for state law." 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) recognizes that, even in the case of a core proceeding, preserving the interests of the state legal systems may weigh in favor of this Court abstaining from hearing a matter. Although the statute does not provide specific criteria for determining whether "permissive" abstention is proper, this Court has applied the following twelve factor test:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than [28 U.S.C. §] 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow

> judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool Int'l, Inc.)*, 320 B.R. 552, 556-57 (Bankr. D. Del. 2005) (citation omitted). These factors favor abstention.

31. First, the prosecution of this adversary proceeding should have no impact on the bankruptcy estate. As noted, PNC claims to have a security interest in and lien upon any net recovery so any recovery will inure to PNC's benefit. This Court has abstained when an "adversary proceeding will have little or no effect upon creditors' recovery because the amount that the Debtors seek is not significant." *DHP v. Skop*, 435 B.R. at 225. PNC contends that abstention could lead other defendants (in separate adversary proceedings) to follow suit, which could increase the risk of inconsistent judgments. This matter has not been consolidated with other proceedings. The judgment in this matter should have no impact on other cases, which will be adjudicated between separate parties based on distinct facts. Further, Defendant has not filed a proof of claim, demands a jury trial and, pursuant to Local Rule 7012-1, does not consent to this Court entering final orders in this matter. Because this Court's power with respect to the relief sought is limited, it cannot efficiently administer this matter. This factor weighs in favor of abstention.

32. Second, state law issues clearly predominate. The Complaint is a dispute between Plaintiff and Defendant over an action to collect payment for goods sold and delivered. *See In re LaRoche Indus., Inc.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004) ("this case is essentially a contract dispute involving a former debtor and a non-debtor. No provision of the Bankruptcy Code is implicated. Since state law issues do predominate, this factor favors abstention."). The FSC

dictates that state law applies and the main issues in the case are governed by state law (for example, whether Defendant breached the Supply Agreement and whether Defendant has valid defenses). Unless Plaintiff proves its state law causes of action (i.e. shows Defendant owes a debt), there is no reason to even consider whether Defendant violated the automatic stay.

33. Third, although the Court is capable of applying the law of the State of North Carolina, it is not the optimal use of the Bankruptcy Court's expertise. *See DHP v. Skop*, 435 B.R. at 227 (state court better able to identify and resolve state court issues). As noted above, any bankruptcy-specific issues are, at most, secondary to the state law claims. This factor weighs in favor of abstention.

34. Fourth, there is no related state law proceeding *because* Plaintiff ignored the FSC. This "should not be counted in its favor." *LaRoche Indus., Inc.*, 312 B.R. at 254. Moreover, this factor is "not dispositive (but is only one factor) in considering discretionary abstention." *Integrated Health,* 291 B.R. at 621 (citing *Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.)*, 267 B.R. 673, 679 (2000)). This factor weighs in favor of abstention.

35. Fifth, PNC concedes that there is not an independent basis for federal jurisdiction over this dispute. The Complaint also does not raise any federal question. This factor weighs in favor of abstention or is neutral.

36. Sixth, this Court has only *de minimis* familiarity with this adversary proceeding. As noted above, very little has occurred in this case since Plaintiff filed the Complaint. Defendant's Motion has been pending for over a year as a result of the conversion to chapter 7 and PNC's intervention. Even if there was a stronger nexus to the bankruptcy case, "familiarity with a bankruptcy case is insufficient to 'militate against abstention.' " *LaRoche Indus., Inc.*, 312 B.R. at 254. Plaintiff's claims do not involve any issue of bankruptcy law, do not relate to the main

case and are "not inextricably intertwined with the administration of the estate." *DHP v. Skop*, 435 B.R. at 228 (citations omitted). Defendant has not filed a proof of claim. This factor favors abstention.

37. Seventh, this matter involves non-core claims, as discussed in detail above. Plaintiff has couched simple state law claims in the folds of Bankruptcy Code sections to give the appearance that these claims are core. They involve alleged breaches of a pre-petition contract. This factor favors abstention. *LaRoche Indus., Inc.*, 312 B.R. at 254 ("While the Debtor argues that the case involves a request for turnover of property of the estate under section 542, it is really only seeking to collect a debt it alleges is due to it under the Agreement. No substantive issues of bankruptcy law are involved. This factor favors abstention.").

38. Eighth, all Counts are non-core, so "severing counts need not be done." *DHP v. Skop*, 435 B.R. at 232. Even if Count One for violation of the automatic stay can be considered core, PNC concedes that severability is feasible. Indeed, this Court could adjudicate whether Defendant's conduct gives rise to a violation of the automatic stay after (and if) the state courts of North Carolina determine that Defendant breached the Supply Agreement and owes Plaintiff money. This factor favors abstention.

39. Ninth, the parties agree that this Court's docket is extremely busy. The burden on the Court's docket can be alleviated by abstaining from matters that can and should be adjudicated elsewhere.

40. Tenth, this is a classic case of forum shopping. Rather than follow the enforceable FSC in the Supply Agreement, which requires all disputes be adjudicated in North Carolina, Plaintiff chose to file in this Court for its convenience and to Defendant's detriment. This factor favors abstention.

41. Eleventh, Defendant has a Seventh Amendment right to a jury trial on at least some of Plaintiff's claims (which are virtually identical). The fact that jury trials are temporarily suspended in North Carolina is irrelevant, particularly in light of the fact that this Court cannot conduct a jury trial on Plaintiff's claims at all. Moreover, this case is in its infancy and there is ample time before trial for restrictions to be lifted. Finally, Defendant has not filed a proof of claim. This factor favors abstention.

42. Twelfth, although PNC is standing in the shoes of the estates, there may be other third parties involved in this matter. At worst, this factor is neutral.

43. Because the factors discussed above favor abstention or are neutral, the Court should abstain on a permissive basis if it determines dismissal or mandatory abstention is inappropriate.

## Conclusion

Although Plaintiff has creatively attempted to invoke this Court's core jurisdiction, the claims at issue in this adversary proceeding are simple state law claims for breach of contract. The parties expressly agreed that such claims would be adjudicated in the state courts in North Carolina. The Court should dismiss the Complaint for improper venue, abstain on a mandatory or permissive basis, or at the very least confirm that it will only enter proposed findings of fact and conclusions of law subject to *de novo* review by the District Court

| | |
|---|---|
| Dated: September 14, 2020<br>Wilmington, Delaware | Respectfully Submitted,<br><br>**THE ROSNER LAW GROUP LLC**<br><br>*/s/ Jason A. Gibson*<br>Frederick B. Rosner (DE #3995)<br>Jason A. Gibson (DE #6091)<br>824 N. Market Street, Suite 810<br>Wilmington, DE 19801<br>Telephone: (302) 777-1111<br>rosner@teamrosner.com<br>gibson@teamrosner.com<br><br>-and-<br><br>FENNEMORE CRAIG, P.C.<br><br>Anthony W. Austin<br>2394 E. Camelback Road, Ste. 600<br>Phoenix, AZ 85016<br>602-916-5000<br>aaustin@fclaw.com<br><br>*Attorneys for Defendant* |